IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIA JORDAN, CRANDALL KELLY AND CARLA WEST | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:16-cv-1204 |
| v. | § | |
| | § | |
| CITY OF HOUSTON, TEXAS, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Maria Jordan, Crandall Kelly and Carla West ("Jordan," "Kelly" and "West," respectively and collectively as "Plaintiffs", file this Original Complaint against Defendant City of Houston, Texas, and for his cause of action respectfully shows the Court as follows:

**I.**
**INTRODUCTION**

1.      This action seeks equitable relief, compensatory and punitive damages, liquidated damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest for race and color discrimination (Plaintiffs), and gender discrimination (Jordan, West) in violation of Title VII, suffered by Plaintiffs in the course of their employment with Defendant.  Plaintiffs complains that they was discriminated against regarding the terms and conditions of their employment based on their race and color (Plaintiffs), and their gender (Jordan, West) and retaliated against after they opposed unlawful discrimination in the workplace.

2.     Plaintiffs filed Charges of Discrimination with the Texas Workforce Commission - Civil Rights Division under the worksharing agreement - and the EEOC on claims relating to this discrimination and retaliation, and asked the EEOC to investigate on behalf of both agencies against the Defendant.

3.     Plaintiffs has been given a right to sue letter on these Charges.

4.     All administrative prerequisites have occurred.

5.     Plaintiffs demand a jury on all issues triable to a jury

## II.
## PARTIES

6.     Plaintiff Maria Jordan is a Texas resident.

7.     Plaintiff Crandall Kelly is a Texas resident.

8.     Plaintiff Carla West is a Texas resident.

9.     Defendant City of Houston, Texas is a governmental entity.   Service of the Summons and this Complaint may be made by serving Anna Russell, its City Secretary, at 900 Bagby Street, Houston, Texas 77002 under the authority of TEXAS CIVIL PRACTICE & REMEDIES CODE § 17.024(b).

10.     The City of Houston employs Plaintiffs.

11.     Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification, or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## III.
## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C.

1331.

13.    This Court has personal jurisdiction over City of Houston, Texas and venue is

proper in Harris County, Texas because all or a substantial part of the events or omissions giving

rise to Plaintiffs' claims occurred in Harris County, Texas, and at all times relevant to this causes

of action against City of Houston, Texas, accrued, Plaintiffs worked for City of Houston, Texas

in Harris County, Texas.

## IV.
## CONDITIONS PRECEDENT TO SUIT

14.    All conditions precedent to filing this cause of action have been met.

**A.  Maria Jordan**

15.    Jordan filed a complaint of discrimination against Defendant under Charge

Number 460-2010-00287 with the Equal Employment Opportunity Commission ("EEOC") and

the Texas Workforce Commission Civil Rights Division ("TWC-CRD") on or about October 20,

2010.

16.    On or after January 29, 2016, the United States Department of Justice issued a

Notice of Right to Sue letter entitling Jordan to file an action in this Court for her claims.

17.    This action is filed within ninety (90) days of Jordan's receipt of the Notice of

Right to Sue Letter from the Department of Justice.

**B.  Crandall Kelly**

18.    Kelly filed a complaint of discrimination against Defendant under Charge

Number 460-2008-05027 with the Equal Employment Opportunity Commission ("EEOC") and

the Texas Workforce Commission Civil Rights Division ("TWC-CRD") on or about April 12, 2008.

20.     On or about March 12, 2009, Kelly filed an amended EEOC Charge.

20.     On or after January 29, 2016, the United States Department of Justice issued a Notice of Right to Sue letter entitling Kelly to file an action in this Court for his claims.

21.     This action is filed within ninety (90) days of Kelly's receipt of the Notice of Right to Sue Letter from the Department of Justice.

**C.  Carla West**

22.     West filed a complaint of discrimination against Defendant under Charge Number 460-2009-04681 with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC-CRD") on or about September 21, 2009.

23.     On or after January 29, 2016, the United States Department of Justice issued a Notice of Right to Sue letter entitling West to file an action in this Court for her 2009 charge.

24.     West filed a second complaint of discrimination against Defendant under Charge Number 460-2014-01804 with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC-CRD") on or about March 20, 2014.

25.     On or after January 29, 2016, the United States Department of Justice issued a Notice of Right to Sue letter entitling West to file an action in this Court for her 2014 charge.

26.     This action is filed within ninety (90) days of West's receipt of the Notice of Right to Sue Letters from the Department of Justice.

## V.
## <u>FACTUAL BACKGROUND</u>

27.    Plaintiffs are employed by Defendant as firefighters in the Houston Fire Department ("HFD").

28.    At all times, Plaintiffs were qualified for the position they held for Defendant during their employment.

29.    The City of Houston, Texas Fire Department has engaged in a pattern and practice of targeting Black / African American firefighters and subjecting those firefighters to harassment and a hostile work environment.

30.    The Black firefighters are also subject to the HFD policies discriminatorily.

31.    The City of Houston, Texas Fire Department has engaged in a pattern and practice of targeting female firefighters and subjecting those firefighters to harassment and a hostile work environment.

32.    The female firefighters are also subject to the HFD policies discriminatorily.

33.    Defendant has discriminated against Plaintiffs by denying or restricting their ability to work overtime based on their race/color (Plaintiffs) and/or gender (Jordan, West).

34.    Defendant has discriminated against Plaintiffs by assigning them less desirable or less prestigious duties based on their race/color (Plaintiffs) and/or gender (Jordan, West).

35.    Defendant has discriminated against Plaintiffs by imposing additional qualifications, requirements or testing based on their race/color (Plaintiffs) and/or gender (Jordan, West).

**A.  Maria Jordan**

36.    Jordan is a female, Black, African-American, firefighter employed by Defendant.

5

37.     Jordan attended the Houston Fire Academy beginning in October 1993.

38.     After Jordan completed her training in April 1994, Jordan joined the Houston Fire Department ("HFD").

39.     In 2010, Jordan was an Engineer/Operator ("E/O") assigned to Station 59 on the B shift.

40.     During Jordan's tenure at HFD, she has been denied equal opportunities and treatment, and been subjected to a hostile work environment and retaliation.

41.     Since Jordan joined HFD, she has been subjected to additional testing requirements that Jordan's male co-workers were not required to complete.

42.     For example, during Jordan's rookie year, Jordan's Captain required her to take a test that required her to slide down the pole in the fire station, even though this was not a requirement to get off of probation nor were the male firefighters required to take this test.

43.     Jordan successfully completed the test, but in the process she sustained injuries in both knees.

44.     After Jordan's promotion to Engineer/Operator ("E/O"), she was told that she would be required to take another test in order to ride-up as Acting Captain.

45.     At the time Jordan was told this, male Engineer/Operators were not required to take a test before riding-up as Acting Captains.

46.     Jordan has also been given other tests that Jordan's male co-workers were not required to take.

47.     Since Jordan joined HFD, she has also been denied training opportunities and other opportunities that were made available to Jordan's male co-workers.

6

48. Jordan has been denied opportunities to ride a higher classification when it was her turn or during the times that Jordan was objectively the Engineer/Operator who should have been assigned as Acting Captain.

49. After Jordan's promotion to Engineer/Operator, she was consistently passed over to ride-up as Acting Captain and men who were the same classification as Jordan were instead chosen to "ride up" out of turn and disproportionately to the number of times Jordan was allowed to "ride up."

50. Acting Captains are paid more than Engineer/Operators, so each time Jordan was passed over, she was denied the opportunity to earn additional compensation.

51. In addition, certain Captains have refused to allow Jordan to drive various apparatus, in spite of Jordan's position, Jordan's assignment, or when there is an open Engineer/Operator slot.

52. Even though Jordan was an experienced Engineer/Operator, male Engineer/Operators were instead given the first opportunities to drive an apparatus.

53. Also, lower ranked male Firefighters had also been assigned to drive the apparatus on Jordan's shift instead of Jordan and consequently those male firefighters were paid more for "riding up" as an E/O on that shift.

54. The denial of equal opportunity has been an ongoing practice since Jordan joined the department.

55. For example, while Jordan was recovering from bilateral reconstructive surgery on Jordan's knees in February 1995 as a result of the on-the-job injury she sustained in the pole test incident, she enrolled in paramedic school.

56. At that time HFD was in need of additional paramedics.

7

57.     Jordan was told by the EMS officer that based on HFD's past history with injured firefighters, she would be able to complete the program before being returned to work.

58.     Prior to Jordan, many other male firefighters had been placed in paramedic school while being injured, and those male firefighters had been able to complete the program before being released to full duty.

59.     Jordan was not given that opportunity.

60.     After three weeks, when Jordan returned to the fire station to ride on the ambulance as a third person observing, the captain at the station told Jordan that she would not be allowed to ride on the ambulance without any valid justification for denying her that opportunity.

61.     As a result of this disparate treatment, Jordan was removed from paramedic school entirely.

62.     This denial has cost Jordan considerable money.

63.     During Jordan's employment with HFD, Jordan has been consistently denied the opportunity to work overtime.

64.     For example, Jordan filed grievances in 2007 and 2008 after she was denied the opportunity to holdover or work overtime on several occasions.

65.     Jordan continued to be denied the same opportunities to work overtime as Jordan's male co-workers.

66.     In order for Jordan to work overtime, she could receive that assignment by either being called in by (1) Jordan's own station or (2) central staffing.

67.     As to the first, Jordan had never been called in by Jordan's station on other shifts.

68.     Male firefighters and E/O's on Jordan's shift are called in to work overtime on the other shifts, but Jordan was not given that opportunity.

69.     As to the second option, Jordan was not called in for overtime at the same frequently as males.

70.     In addition, when Jordan did call in for overtime, she was disproportionately given assignments to heavy call areas, in contrast to Jordan's male co-workers.

71.     Being assigned overtime in a heavy call area is a less desirable assignment that being assigned to stations that are not in heavy call areas.

72.     For example, Jordan was assigned overtime on two days in June 2010 and was assigned to the same heavy-call station, Station 35, on both days.

73.     In contrast, male firefighters who were assigned overtime on those same two days were only assigned to work one of their two overtime days at Station 35.

74.     Male firefighters and White firefighters are assigned to the less desirable, heavy call stations less frequently than would be expected if assignments were made using non-discriminatory criteria.

75.     The staffing and overtime decisions at Central Staffing are made by males employed by Defendant.

76.     This discriminatory practice has also been consistently applied since Jordan joined HFD.

77.     For example, in 1997 Jordan was pulled off the overtime list because a chief claimed that Jordan used an excessive amount of sick time.

78. Jordan filed a grievance and won, but because of this chief's discriminatory action, Jordan was taken off the overtime list for several months and lost out on income Jordan could have earned.

79. Even though Jordan won the grievance, nothing was done to remedy the economic damage Jordan sustained as a result of being pulled from working overtime during that period.

80. During Jordan's employment with HFD, Jordan has been involuntarily transferred and, at other times, Jordan's requests to transfer to other stations have been blocked.

81. In 2000, Jordan requested a transfer after being subjected to harassment and retaliation at Jordan's station following the February 2000 McDonald's fire during which a female firefighter was killed.

82. Jordan had followed orders but questioned a decision at the fire, and in retaliation for this, Jordan was punished by being taken to a burned building and written up.

83. Jordan filed a complaint for harassment with the Office of Inspector General ("OIG") which was dismissed.

84. Jordan then requested a transfer but that request was held for several months with no explanation.

85. In 2003 and 2004 Jordan submitted requests for transfer where were refused.

86. Jordan later learned that a white firefighter, with less seniority than Jordan, was instead granted a transfer to one station that Jordan had been denied the transfer because, she had been told, no transfers to that station were being allowed.

87. This discriminatory conduct relating to transfers was never resolved and is ongoing.

88.     Jordan has also been retaliated against for filing grievances concerning gender discrimination and for filing a previous charge of discrimination with the EEOC.

89.     Jordan filed a charge of discrimination with the EEOC following the denial of Jordan's transfer request in 2004.

90.     After Jordan filed this charge of discrimination, she was subjected to retaliation and the harassment directed towards her increased.

91.     In addition, Jordan was written up unnecessarily and given additional tests that were not given to other firefighters that had not filed EEOC charge.

92.     Also, after Jordan filed her complaint, Jordan's performance ratings went down in retaliation for filing those complaints.

93.     Jordan continued to be subjected to disparate treatment regarding transfers, job positions, overtime, evaluations, testing, training, duties and responsibilities.

**B.  Crandall Kelly**

94.     Kelly is amale, Black, African-American, firefighter employed by Defendant.

95.     On or about July 9, 2007, Kelly filed an EEOC Charge against Defendant alleging discriminatory and retaliatory conduct by Captain Gregory ("Gregory") towards Kelly.

96.     To resolve that charge, Defendant agreed that Gregory and Kelly would not be assigned to work the same fire station or on the same shift.

97.     On or about February 4, 2008, Kelly was placed at a new fire station, Station 105.

98.     Gregory was also assigned to the new station, which was against the agreement reached between Defendant and Kelly.

99.     Because of the violation of the earlier agreement, Kelly has been subjected to further harassment and a hostile environment by Gregory.

11

100. Gregory has made it openly known to Defendant that Gregory hates Kelly and has made that comment and others showing Gregory's animus toward Kelly to Defendant's personnel.

101. Gregory has also ordered employees under Gregory's supervision to not talk to Kelly.

102. Gregory has also given others information and instructions on how to continue to subject Kelly to discrimination, harassment and retaliation for filing a charge of discrimination against Gregory.

103. Defendant has no legitimate reason for why it violated the earlier agreement with Kelly.

104. Kelly was not provided with an explanation for Defendant's decision for forcing Kelly to work with Gregory at Station 105.

105. Gregory's comments and instructions concerning Kelly to Kelly and others have created a racially hostile work environment.

106. Kelly has been subjected to retaliation and a hostile environment for having filed a previous charge of discrimination in violation of Title VII of the Civil Rights Act of 1964, as Amended.

107. During Kelly's tenure at HFD, Kelly has been subjected to a hostile work environment and retaliated against for speaking out about race discrimination.

108. Kelly has filed prior complaints with staff services and/or the City's Office of Investigator General ("OIG") that resulted in Kelly being subjected to retaliatory actions.

109.    Kelly's 2007 charge of discrimination he filed with the EEOC regarded discrimination and hostile working conditions based on a physical assault and subsequent involuntary transfer.

110.    The conduct complained of in the previous EEOC charge was not resolved and still continues.

111.    Kelly was targeted for retaliation, as well as harassment, a hostile work environment, and discrimination because of Kelly's race / color, and his opposition to race discrimination and harassment.

112.    During Kelly's employment with Defendant, Kelly has been subjected to disparate treatment regarding compensation, including overtime, and assignments because of Kelly's race/color (African American / Black).

113.    In addition, Kelly has been denied transfers.

## C.  Carla West

114.    West is a female, Black, African-American, firefighter employed by Defendant.

115.    West attended the Houston Fire Academy in 1994.

116.    While West was at the Academy, she was among a group of women subjected to disparate treatment in connection with the testing requirements to graduate from the Academy.

117.    Fifteen people failed a test required to graduate from the Academy.

118.    Only one of those people who failed was a white male, and this individual was later informed he passed the test after a question on the test was thrown out.

119.    The remaining people who failed the test were all women and/or other minorities.

120.    These fourteen individuals were then fired.

121.    After filing charges with the EEOC for discrimination, many but not all of the women were rehired but were required to go back through the Academy again.

122.    This disparate treatment of women and minorities in the Houston Fire Department continued during all times relevant to this complaint.

123.    During West's employment with HFD, she had been subjected to discrimination regarding fire station assignments.

124.    It is well known in the department that certain individuals are instructed not to put their names on lists to transfer stations.

125.    West has personally observed a captain calling and telling certain individuals to remove their names from the lists to transfer to that captain's stations.

126.    It is understood that ignoring these instructions or attempting to transfer to a station without the approval of that station's captain will be detrimental to your career with HFD.

127.    It is also know that women and other minorities are not generally encouraged to work at all fire stations.

128.    As a result, West has been limited in the stations at which she could work.

129.    In 2007, West was promoted to Engineer/Operator and she transferred to Station 9.

130.    At Station 9, West continued to be subjected to harassment and a hostile work environment that undermined West's competence to perform hers job functions.

131.    At that time, West work on the B shift at Station 9.

132.    West was the only woman on West's shift and also was the only African American on West's shift.

133.    From the time West arrived at Station 9, she was isolated from West's co-workers on West's shift.

134.    Although the other firefighter's generally joked around with each other, they did not speak to West and they stopped speaking to West when she entered the room.

135.    The environment at West's station during West's shift, was generally hostile and disrespectful toward women, and it included the posting of graphic and inappropriate photographs around the station in places such as the front of the refrigerator.

136.    In addition, there was a stack of pornographic magazines kept around the station which were openly displayed.

137.    These photographs are disrespectful and demeaning to women in general and are inappropriate to have in a work environment.

138.    West complained about the hostile work environment to Captain Shelby Walker and Captain Nowak.

139.    Her complaints were also relayed to Assistant Chief Flanagan and Chief Boriski, but no action was taken to correct this behavior.

140.    Based on the actions towards West, the policies in the Fire Department appear to be built to discourage complaints.

141.    While West was at Station 9, she was not given the opportunity to work overtime, or only allowed to work very limited overtime.

142.    West had put in for overtime assignments for many years without being assigned overtime.

143.    The assignment of overtime was discriminatorily assigned to non-male and/or non-White firefighters.

15

144.    While West was at Station 9, she was also denied the opportunity to ride as shift supervisor.

145.    Even though West was an Engineer/Operator and should be assigned to ride supervisor periodically, West was not been permitted to do so.

146.    West had appropriately requested the opportunity to ride as a shift supervisor for over two years without being allowed to do so.

147.    During that time, West's male co-workers had been permitted to ride as shift supervisor, even though some of those co-workers had less seniority than West.

148.    West took the 2013 Houston Fire Department Promotional Inspector Examination.

149.    The "Draft" results posted for the exam showed that West had passed the exam.

150.    However, when the results were certified on July 9, 2013, the results showed that West did not pass the exam.

151.    Between the date of the "Draft" results and the certified list, numerous questions were removed from the exam or had what was accepted as the correct answer to the question changed.

152.    This manipulation of results, had a disproportionate negative impact on non-male and non-White candidates.

153.    In addition, the revisions to the testing questions has historically only changed candidates' position on the list or increased the number of candidates that have passed.

154.    It had been the standard practice that once a candidate passes the examination, they continue to be on the list even if subsequent changes to the grading lowers their score.

155.    West was improperly removed from the promotion list.

16

156.    The decisions on which questions to remove and which answers to change were made with the intent to discriminate against non-male and/or non-White candidates.

157.    Plaintiff properly filed an appeal of the examination questions and results and a grievance with Defendant but no action was taken to correct the discriminatory conduct.

**D.   Plaintiffs' Summary**

158.    Defendant has engaged in a pattern and practice of targeting female firefighters and Black / African American firefighters and subjecting these firefighters to discrimination, harassment, retaliation, and a hostile work environment.

159.    The actions directed towards Jordan, West and other female firefighters were demeaning, humiliating, hostile, aggressive, unprofessional, and constituted sexual harassment that was severe, egregious, pervasive and altered the terms and conditions of Jordan's and West's employment.

160.    The actions directed towards Plaintiffs and other Black / African-American firefighters were demeaning, humiliating, hostile, aggressive, unprofessional, and constituted sexual harassment that was severe, egregious, pervasive and altered the terms and conditions of Plaintiffs' employment.

161.    The discriminatory, retaliatory and/or hostile work environment events occurred continuously from 1994 until today.

162.    Plaintiffs were targeted for harassment, a hostile work environment, and discrimination because of their gender [female] (Jordan and West) and their race / color [Black / African-American] (Plaintiffs).

163.    During Plaintiffs' employment with the City, Plaintiffs were subjected to disparate treatment regarding compensation, including overtime, opportunities to "ride up",

transfers and assignments because of their gender [female] (Jordan and West) and their race / color [Black / African-American] (Plaintiffs).

164.    These conditions have resulted in segregation between the various fire stations and shifts, and have led to violations of Title VII (Plaintiffs) and the Equal Pay Act, 29 U.S.C. § 206(d) (Jordan and West).

165.    In addition, Defendant's policies and practices regarding transfers, overtime assignments, promotions and additional compensation opportunities have a negative disparate impact on African Americans and women in violation of Title VII.

166.    Plaintiffs have been discriminated against, subjected to different terms and conditions of employment, and to harassment and retaliation because of their gender [female] (Jordan and West) and their race / color [Black / African-American] (Plaintiffs), in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Texas Commission on Human Rights Act, as codified in the Texas Labor Code § 21.001, *et. seq.*

## VI.
## CAUSE OF ACTION—
## DISCRIMINATION/HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII

167.    Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

168.    As described above, Plaintiffs has been subjected to discrimination and a hostile work environment based on their race and color (Plaintiffs) and gender (Jordan, West), in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*

169.    During their employment with the City of Houston, Plaintiffs have been subjected to disparate treatment regarding compensation, including overtime, transfers, promotional

opportunities, and assignments because of their race and color (Plaintiffs) and gender (Jordan, West).

170.    These conditions have resulted in segregation between the various fire stations and shifts, and have led to violations of Title VII and the Equal Pay Act, 29 U.S.C. § 206(d).

171.    Defendant did not make a good faith effort to comply with statutes against discrimination.

172.    Defendant knowingly, willfully, or with reckless disregard, carried out its illegal pattern or practice regarding discrimination towards Plaintiffs.

173.    Plaintiffs continue to be subjected to different terms and conditions of employment because of their race and color (Plaintiffs) and gender (Jordan, West).

174.    Plaintiffs have not been afforded the same terms and conditions of their employment as similarly situated employees outside Plaintiff's protected categor(ies).

175.    Defendant allowed, failed to take any action, failed to take remedial action, failed to discipline its employees, and/or failed to take any corrective action, thereby allowing and facilitating the continuance of the discrimination and harassment towards Plaintiffs.

176.    The conditions described above led to a hostile work environment because of the following conditions:

      a.    Severe and/or pervasive;

      b.    Outrageous conduct;

      c.    Demeaning conduct;

      d.    Failure to take prompt remedial action;

      e.    Affected terms and conditions of Plaintiffs' employment;

      f.    Did not provide sufficient recourse.

177.   Further, Defendant acted with malice or, in the alternative, with reckless indifference to the federally protected rights of the Plaintiffs.

178.   As a result of Defendant's actions or inaction in violation of Title VII, Plaintiffs have suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, and loss of enjoyment of life in the past, all of which were caused by Defendant's treatment of Plaintiffs and, in all probability, Plaintiffs will continue to suffer such damages in the future.

## VII.
## CAUSE OF ACTION—
## RETALIATION

179.   Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

180.   During their employment, Plaintiffs opposed unlawful discrimination in the workplace.

181.   As described above, because Plaintiffs opposed unlawful race and/or gender discrimination in the workplace, Defendant retaliated against Plaintiffs and subjected Plaintiffs to different terms and conditions of employment.

182.   As a result of Defendant's actions in violation of Title VII described above, Plaintiffs have suffered loss of wages and benefits, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, and loss of enjoyment of life in the past, all of which were caused by Defendant's treatment of Plaintiffs and, in all probability, Plaintiffs will continue to suffer such damages in the future.

## VIII.
## <u>ATTORNEYS' FEES</u>

183.   Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

184.   As a result of the actions stated above, Plaintiffs were forced to employ the undersigned attorneys.

185.   As a result of Defendant's conduct, Plaintiffs are entitled to recover from Defendant their reasonable attorneys' fees for bringing this action pursuant to the applicable statutes, as well as the costs incurred in this action and any and all appeals of this action.

## IX.
## <u>DAMAGES</u>

186.   Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

187.   As a result of Defendant's violations of Title VII. Plaintiffs seek the following relief: (1) loss of wages and benefits in the past and the future; (2) costs of court, expert fees and attorneys' fees; (3) mental anguish and emotional distress in the past and future (4) any punitive, equitable or liquidated damage provided by law, and (5) pre-judgment and post-judgment interest as allowed by all relevant statutes.

188.   Also, since Defendant's actions were committed with reckless indifference to Plaintiffs' statutorily protected rights, Plaintiffs are entitled to recover punitive damages in an amount sufficient to deter Defendant and others similarly situated from this conduct in the future.

189.   Additionally, since Defendant's actions were committed willfully, Plaintiffs seek any additional damages allowed under the relevant statutes.

## X.
## JURY DEMAND

190.    Plaintiffs request a trial by jury on all issues triable by a jury.

## XI.
## REQUEST FOR RELIEF

191.    Each and every allegation contained in the foregoing paragraphs is realleged as if fully rewritten herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that they have judgment against the Defendant for (a) the full amount of Plaintiffs' actual damages; (b) the full amount of Plaintiffs' pecuniary damages and losses; (c) punitive damages; (d) Plaintiffs' attorneys' fees; (e) pre-judgment and post-judgment interest at the highest allowable legal rate; (f) all of Plaintiffs' taxable costs; (g) mental anguish damages; and (h) all such other and further relief, both at law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

By:     /s/  Joseph Y. Ahmad
Joseph Y. Ahmad
Texas Bar No. 00941100
joeahmad@azalaw.com
AHMAD, ZAVITSANOS, ANAIPAKOS,
ALAVI & MENSING P.C.
1221 McKinney Street, Suite 2500
Houston, Texas  77010
Telephone:  (713) 655-1101
Telecopier:  (713) 655-0062

Of Counsel:
Nasim Ahmad
Texas Bar No. 24014186
nahmad@cline-ahmad.com
CLINE | AHMAD
723 Main Street, Suite 904
Houston, Texas 77002
Telephone:  (832) 767-3207
Telecopier:  (281) 864-4379

ATTORNEY FOR PLAINTIFFS
MARIA JORDAN, CRANDALL KELLY
AND CARLA WEST